UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BOBBIE FISCHER SAPP,**

      **Plaintiff,**

v.                                Case No: 6:21-cv-1515-PGB-DCI

**JEFFREY MARCUM, JOHN BOLOGNA, JESSICA ELLER, DANIEL PUSHOR, DEAN RICHARD JOHNSON and CITY OF WINTER PARK,**

      **Defendants.**

_____/

## ORDER

This cause is before the Court on the Defendants' Motion to Exclude or Limit the Testimony and Opinions of Darrin Porcher. (Doc. 52 (the "**Motion**")). The Plaintiff submitted a Response in Opposition. (Doc. 67). Upon consideration, the Motion is due to be granted.

**I.  BACKGROUND**

This litigation presents the question of whether Officers with the Winter Park Police Department acted properly when they entered a residence for a health and wellness check, encountered the Plaintiff in her bed, and responded with force when the Plaintiff pointed a firearm at the officers. (Doc. 26 (the "**Third Amended Complaint**")). The Plaintiff retained Darrin Porcher, EdD, to offer opinions on the use of force. (Doc. 52-1). Dr. Porcher's report is structured into

opinions concerning the alleged failure to apply de-escalation tactics during the police-citizen encounter; the alleged use of excessive force; the alleged failure of LT Bologna to supervise other officers on the scene; and the alleged failure of officers to intervene on behalf of the Plaintiff upon observing an officer using excessive force. (*Id.*). He also opines that the entry into Plaintiff's residence was unlawful. (*Id.*).

The Defendants seek to exclude Dr. Porcher's opinions and testimony because his opinions are contrary to applicable law and thus run afoul of Rule 403 and fail *Daubert*'s helpfulness prong. (Doc. 52, p. 11). The Defendants also contend that Dr. Porcher's opinions regarding de-escalation tactics are inadmissible under controlling precedent and do not constitute a *Graham* factor for evaluating whether use of force was objectively reasonable. (*Id.* at p. 14); *see Graham v. Connor*, 490 U.S. 386 (1989). Similarly, the Defendants claim Porcher's opinions on use of force and the alleged failure to intervene are contrary to controlling precedent. (Doc. 52, pp. 15–20). In summary, the Defendants challenge Dr. Porcher's methodology and the helpfulness of his opinions, arguing "Porcher's opinions are *ipse dixit* so conflicting with precedents . . . and at the very least are unhelpful" and should therefore be excluded. (*Id.* at p. 22).

II. **STANDARD OF REVIEW**

The Court's analysis regarding the admissibility of expert testimony begins with Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. As explained by the Supreme Court, the purpose of the expert admissibility rules is to enlist the federal courts as "gatekeepers" tasked with screening out "speculative" and "unreliable expert testimony." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). In the Eleventh Circuit, the admissibility of expert testimony is distilled into the following three factors:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts . . . ." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)).

As to the reliability prong, admissibility under *Daubert* inherently requires the trial court to conduct an exacting analysis of the proffered expert's methodology. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). The Supreme Court has identified a number of factors for courts to consider when conducting that analysis, including (1) whether the theory or technique can be, and has been, tested; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has attained general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593–94.

"Of particular relevance to an expert proffered for his experience, the court notes that neither *Daubert* nor its progeny preclude experience-based testimony." *Butler v. First Acceptance Ins. Co.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. Aug. 17, 2009) (quoting *Kumbo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999)). However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only the *ipse dixit* of the expert," and the "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "When an expert relies primarily on experience, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is

4

reliably applied to the facts." *Butler*, 652 F. Supp. 2d at 1272 (quoting *Frazier*, 387 F.3d at 1261). This is because "[a]n expert's qualification and experience alone are not sufficient to render his opinions reliable," and expert testimony does nothing more than what lawyers can argue in closing does not help the trier of fact. *Id.*

In *Specht v. Jensen*, 853 F.2d 805, 808–09 (10th Cir. 1988), the Court recognized that "our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury." Accordingly, "an expert witness cannot state a legal conclusion by applying law to the facts, passing upon weight or credibility of the evidence, or usurping the province of the jury by telling it what results should be reached." *Baumann v. Am. Fam. Mut. Ins.*, 836 F. Supp. 2d 1196, 1201 (D. Colo. Dec. 28, 2011); *see also Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law."). It is ultimately the burden of the party who offers the expert to show that the expert's opinion is admissible, and the party must do so by preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005).

### III.  DISCUSSION

#### A.  The Plaintiff's Response

The Defendants dedicate ten (10) pages of their Motion to a detailed discussion on why Dr. Porcher's opinions regarding the entry into Plaintiff's home, de-escalation tactics, the use of force, and his opinion regarding the alleged failure to intervene do not survive a *Daubert* challenge. (Doc. 52, pp. 11–21). The Plaintiff,

5

as the proponent of Dr. Porcher's, has the burden to show that the expert's opinion is admissible by a preponderance of the evidence. *Rink*, 400 F.3d at 1291–92. With this in mind, the Court turns to the Plaintiff's response in opposition.

Plaintiff's counsel argues that "Dr. Porcher's reasoning and methodology underlying his testimony is reliable and Dr. Porcher properly applied his reasoning and methodology to the facts in issue."[1] (Doc. 67, p. 3). The Plaintiff observes that Dr. Porcher's opinions are supported "through the review of approximately forty (40) documents and information." (*Id.*). That said, the Plaintiff does not expound on the methodology underpinning Dr. Porcher's opinions or why the methodology is reliable or helpful to the jury. (*Id.*). Similarly, the Plaintiff posits without elaboration that Dr. Porcher's methodology is based on over thirty (30) years of experience in the use of force and police practices. (*Id.* at p. 7). And finally, the Plaintiff contends that "[u]se of force experts are typically in law enforcement and use data accepted in the field that are specifically related to the facts and issues at hand. [And] Dr. Porcher applied law enforcement principles, even the Defendant's own internal policies to the facts of the case." (*Id.* at p. 8). Again, this bald assertion is divorced from substantive analysis.

---

[1] The Plaintiff contends that Dr. Porcher will offer opinions on the following topics: the responsibility of law enforcement when applying the de-escalation tactics, deadly force versus less lethal types of force, the reasonableness of excessive force factors in *Graham v. Connor*, tactics for law enforcement officers to protect themselves when confronting a dangerous subject, the duty to intervene, and the process law enforcement officers undertake to avoid unlawful entry into a residence. (Doc. 67, p. 2).

The Plaintiff does not identify the specific data relied upon by Dr. Porcher, which of the Defendants' internal policies were considered by him, or how the data and policies applied to the facts of this case satisfy the test of reliability. When an expert like Dr. Porcher bases his opinions primarily on his experience, he must explain how that experience leads to the conclusion reached, why the experience is a sufficient basis for the opinion, and how the experience was reliably applied to the facts. *Frazier*, 387 F.3d at 1261. Plaintiff's counsel fails to articulate how Dr. Porcher satisfies this standard of admissibility.

It is not enough for the proponent of an expert confronted with a *Daubert* challenge to respond with generalities. The Defendants attack Dr. Porcher's methodology and cite precedent for the proposition that his opinions are contrary to the law and, hence, unhelpful to the jury. Rather than offering an analysis of Dr. Porcher's methodology, including whether his opinions are consistent with controlling caselaw, the Plaintiff merely proffers that his methodology is sound.

It is not the Court's responsibility, nor is it proper for the Court, to independently examine the expert's report to divine whether a reliable methodology has been shown that supports each opinion offered by the expert or to discern the helpfulness of those opinions to the jury. Having failed to present any substantive discussion concerning Dr. Porcher's methodology or the helpfulness of his opinions; that is, their relevance to any issue in dispute, the Plaintiff has failed to carry her burden of showing by a preponderance of the

7

evidence that his opinions survive the *Daubert* challenge.[2] Accordingly, the Defendants' *Daubert* challenged is granted.

### B.   Dr. Porcher's Expert Opinions

Even if the Plaintiff had made a more fulsome response to the Defendants' *Daubert* challenge, the Court would have granted the Motion to exclude Dr. Porcher's opinions. While the Court is not required to engage in this exercise, it does so to present a clear record for the parties' benefit. As a general preview, the Court finds Dr. Porcher's proffered opinions are inadmissible for the following reasons: (1) Dr. Porcher offers opinions which are legal conclusions derived by applying the law to the facts, telling the jury what result it should reach—a duty reserved for the trial judge; (2) Dr. Porcher fails to articulate a reliable methodology in support of his opinions; (3) Dr. Porcher offers opinions that are contrary to controlling precedent; and (4) Dr. Porcher engages in rhetoric best employed by lawyers in their closing argument and outside the scope of expert testimony.

---

[2] The Court does not lightly strike an expert witness due to counsel's failure to adequately respond to a *Daubert* challenge. However, the Plaintiff was permitted a 25-page response and used only 8 pages with the bulk of the brief consisting of a recitation of the *Daubert* standard. The Court also notes that in January 2023 it granted summary judgment and denied the *Daubert* motion as moot, because the Plaintiff failed to submit a timely response. (Doc. 57). The Plaintiff was given a second chance and elected to offer scant support for Dr. Porcher's opinions. (Doc. 61). The Court cannot fill in the gaps for the Plaintiff.

### C. Dr. Porcher's Opinions

#### 1. Failure to Apply De-Escalation Tactics

While the failure to apply de-escalation tactics is not a cause of action, it appears that Dr. Porcher's opinions are intended to buttress the Plaintiff's excessive use of force claims. Dr. Porcher opines law enforcement should attempt to utilize de-escalation techniques whenever practicable. (Doc. 52-1, p. 16). Dr. Porcher claims de-escalation tactics have proved to be an essential tool for police departments nationwide, but he fails to cite data in support of this premise. (*Id.*). Similarly, Dr. Porcher asserts de-escalation training has been widely implemented by police agencies in the United States, again without citing a single record in support of this proposition. (*Id.*). And Dr. Porcher references the Department of Justice definition of de-escalation, without citation to the text.[3] It is worth noting that the Defendants are not employed by the Department of Justice, and Dr. Porcher fails to offer any evidence the Defendants are privy to or were trained to adhere to the DOJ policy of de-escalation.

Dr. Porcher also opines that "[w]hen the officers observed Ms. Sapp in the bed upon being awakened, they should have departed without further incident because the wellness check was complete." (*Id.* at p. 17). However, Dr. Porcher asks the jury to rely on his say-so, or *ipse dixit*, in accepting this opinion. Putting on his advocate's hat, Dr. Porcher offers that "[p]olice officers should refrain from the 'all

---

[3] Dr. Porcher lists all materials he reviewed and publications concerning de-escalation are not listed. (Doc. 52-1, p. 3).

9

gas and no brakes' philosophy and maintain distance when appropriate as opposed to continuing the confrontation." (*Id.*). This statement is advocacy and not expert testimony.

Absent from Dr. Porcher's analysis is a discussion of how his de-escalation theory is relevant to any issue in dispute. In *Graham v. Connor*, the Supreme Court held that "[a]ll claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard . . . ." 490 U.S. at 395. Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted). When reviewing the reasonableness of an officer's use of force, the Court must be mindful "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. Thus, the Court concluded "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application" and requires the Court to consider (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officer, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

Dr. Porcher's de-escalation theory does not speak to the test for reasonableness established in *Graham*.⁴ In the instant case, the Plaintiff pointed a firearm at the officers who were conducting the wellness check. As such, the Plaintiff presented an immediate threat to the safety of the officers. Dr. Porcher's opinion that the officers should have de-escalated, or slowed down, the incident focuses on conduct that occurred before the Plaintiff leveled her firearm at the police, which is not relevant to the *Graham* analysis. The Defendants are correct when they assert Dr. Porcher's critique of the officer's tactics does not support an excessive force claim. (Doc. 52, p. 14). A party "cannot establish a Fourth Amendment violation based merely on bad tactics that resulted in a deadly confrontation that could have been avoided." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 615 (2015). Dr. Porcher's de-escalation opinion when boiled down asserts the police officers employed bad tactics, and as such his opinion is contrary to the law, is unhelpful to the jury, and is inadmissible.

Similarly, Dr. Porcher's opinion that the officers should have departed the Plaintiff's home once they observed that she was alive and well is contrary to the law. (Doc. 52-1, p. 17). In *Roberts v. Spielman*, 643 F.3d 899, 904–06 (11th Cir. 2011), the Eleventh Circuit was confronted with this very issue and held the officers acted within their authority by remaining on the property to ensure the subject had not attempted and was not about to attempt suicide. Here, the Plaintiff's boyfriend

---

⁴ At his deposition, Dr. Porcher acknowledged that de-escalation tactics are not required by *Graham*. (Doc. 52-3, 157:12–16).

11

reported the Plaintiff was suicidal, and the officers responded to conduct a wellness check. (Doc. 52-1, p. 8). Contrary to Dr. Porcher's view, the officers were not required to immediately depart the residence once they observed the Plaintiff alive. Not only is this opinion contrary to the law, but it also defies commonsense. The mere fact that an allegedly suicidal person is found alive does not end the inquiry into that person's mental well-being. Accordingly, the Court agrees with the Defendants that Dr. Porcher's opinion that the officers should have departed is not helpful to the jury and is excluded. (*See id.* at p. 17).

2. *Excessive Force*

Dr. Porcher opines that deadly physical force may only be used when an officer reasonably believes a lesser degree of force is inadequate. (*Id.*). He states that SGT Marcum and LT Bologna failed to consider options other than deadly force, such as negotiating with the Plaintiff from a position behind cover which would have provided "time, distance and concealment." (*Id.*). Dr. Porcher's opinion that the officers were erred in not conversing with the Plaintiff from a position of cover goes to the tactics the officers employed in their encounter. As discussed in the preceding section, improper or even bad tactics on the part of the officers does not give rise to a Fourth Amendment claim. *See Sheehan*, 575 U.S. at 615.

Next, Dr. Porcher analyzes the encounter using the three-part test announced in *Graham*. Turning to the first prong of the *Graham* test—immediate threat to the officers—Dr. Porcher repeats his incorrect view that the officers

12

should have departed once they realized the Plaintiff was alive. Notwithstanding that the use of force is judged from the perspective of a reasonable officer on the scene, Dr. Porcher views the exchange through the Plaintiff's perspective. He notes that "Ms. Sapp is legally blind and sleeps without her glasses; therefore, she believed sergeant Marcum was Dean Johnson who assaulted her the night prior so she drew her licensed firearm." (Doc. 52-1, p. 18). The Plaintiff's perception that the police officer was in fact her allegedly belligerent boyfriend is not relevant to the first prong of the *Graham* analysis. The correct analysis requires the jury, and thus Dr. Porcher, to consider the reasonableness of the officer's actions from their perspective once the Plaintiff pointed a firearm at them.[5]

Next, Dr. Porcher turns to the resisting or evading prong of the *Graham* analysis. He concedes the officers had a reasonable basis to believe the Plaintiff would be armed. (*Id.*). He then opines the Plaintiff could not satisfy the "legal definition" of resisting or evading because even though she pointed a firearm at the officers, she did not have her glasses on and "so it should have been obvious to police that she didn't know they were law enforcement." (*Id.*).

---

[5] While not dispositive, the Court notes Dr. Porcher ignores several critical facts. For example, Dr. Porcher acknowledges that SGT Marcum announced police as he and LT Bologna entered the residence. (Doc. 52-1, p. 6). Both men entered the bedroom at which time LT Bologna, not Mr. Johnson, directed the Plaintiff to show her hands, and she complied. (*Id.* at p. 7). The Plaintiff put her hands back under the comforter, and LT Bologna ordered her to again show her hands, at which time the Plaintiff drew a firearm she had concealed under the comforter. (*Id.*). While Dr. Porcher frames the issue from the Plaintiff's perspective ("Ms. Sapp believed it was Mr. Johnson" and "Ms. Sapp exposed her pistol because she thought the police were Mr. Johnson"), the Plaintiff's beliefs are irrelevant to an analysis of excessive force under *Graham*.

13

Three points are worth mentioning. First, Dr. Porcher is not qualified to offer opinions to the jury on whether the Plaintiff violated the law. "[O]ur system reserves to the trial judge the role of adjudicating the law for the benefit of the jury." *See Specht*, 853 F.2d at 808–09. Secondly, Dr. Porcher offers no basis for his opinion that it should have been obvious to the police that the Plaintiff did not identify them as police officers.[6] And thirdly, a jury does not require an expert to understand that the Plaintiff wears glasses and may not have recognized the police or to interpret whether the Plaintiff's visual impairment should have been "obvious" to the officers. Thus, Dr. Porcher's opinion on the level of resistance fails because he may not render a legal opinion, his opinion is unsupported, and an expert is not required to render this opinion. Added to this, Dr. Porcher ignores the requirement to look at the *Graham* factors through the eyes of a reasonable police officer, opting to view the events through the Plaintiff's perspective. The Plaintiff's conduct is only relevant in determining whether the officers had a reasonable basis to believe she posed a threat. *See Powell v. Snook*, 25 F.4th 912, 922 (11th Cir. 2022) ("[W]hen a suspect's gun is 'available for ready use'—even when the suspect has not 'drawn [her] gun'—an officer is 'not required to wait and hope for the best.'").

---

[6] It does not appear that Dr. Porcher reviewed the recorded conversations taken at the correctional facility where the Plaintiff admits hearing OPD (Orlando Police Department) saying they are in the house. (Doc. 76-4). Nor did Dr. Porcher consider the Plaintiff's statement to the police that the officers identified themselves, but she could not be sure without her glasses. (Doc. 76-3, 13:45).

14

Turning lastly to the third prong of the *Graham* analysis, severity of the crime, Dr. Porcher's experience adds nothing to the analysis. He posits the officers were present for a wellness check. That much is obvious. The crime, and hence the analysis of its severity, arose when the Plaintiff pointed a firearm at the officers. Dr. Porcher simply ignores this inconvenient fact.[7]

For these reasons, Dr. Porcher's opinions concerning the alleged use of excessive force are inadmissible.

### 3.  *Failure to Supervise*

Dr. Porcher offers opinions of whether LT Bologna failed to supervise the activities of Officers Pushor and Eller, and whether LT Bologna should have personally questioned Mr. Johnson about his allegation that the Plaintiff was suicidal and heavily armed. (Doc. 52-1, p. 19). The Third Amended Complaint, however, does not contain a failure to supervise cause of action, and Dr. Porcher does not articulate how his opinions are relevant to any issue in dispute. In this section of the report, Dr. Porcher generally takes issue with the quality of LT Bologna's conduct as the senior officer on the scene coupled with criticism of failure to conduct an independent investigation into Mr. Johnson's police report. (*Id.* at pp. 19–20). As previously discussed, a Plaintiff cannot make out a Fourth

---

[7]  In the summary of the facts, Dr. Porcher discusses the deployment of a Taser ordered by LT Bologna upon seeing the Plaintiff's firearm. (Doc. 52-1, p. 13). The Defendants' *Daubert* Motion includes a section on the reasonableness of using a Taser under the facts of this case, quoting *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004), for the premise that using a Taser on an uncooperative subject is not excessive. (Doc. 52, p. 18). However, Dr. Porcher does not offer an opinion on the reasonableness of deploying a Taser before SGT Marcum shot the Plaintiff.

15

Amendment claim based on poor tactical choices on the part of a police officer. Since neither Dr. Porcher nor Plaintiff's counsel attempt to place these opinions into context, they are not relevant and thus are unhelpful to the jury. Finally, the Court notes that Dr. Porcher fails to provide support for these opinions. He neither cites Winter Park Police Department Policies nor recognized customs or standards and instead asks the jury to trust his judgment that the response by Winter Park PD was botched. These are they sort of baseless opinions that the Court should weed out through application of the *Daubert* analysis.

### 4. Failure to Act (Intervene)

The Defendants correctly summarize the law controlling Plaintiff's failure-to-intervene theory. In this Circuit, to be held liable for the failure to intervene an officer must be in a position to intervene; that is, have time to intervene, when he observes another officer employing excessive force. *See Hunter v. City of Leeds*, 941 F.3d 1265, 1282 (11th Cir. 2019). Accordingly, mere presence at the scene when force is used is insufficient to prove the officer had an opportunity to intervene in what he has discerned to be a constitutional violation. *Id.* at 1282–83; *see also Mendoza v. City of Hialeah*, No. 17-21790-CIV, 2017 WL 6514687, at *4 (S.D. Fla. Dec. 20, 2017) (citing *Ensley v. Soper*, 142 F.3d 1401, 1407–08 (11th Cir. 1998)). While Dr. Porcher dedicates eight paragraphs to a general discussion of failure to intervene, he completely fails to apply these principles to the facts of the case. (Doc. 52-1, pp. 20–21). He merely concludes that "Officers Pushor, Eller and lieutenant Bologna failed to intercede after sergeant Marcum continued to have his firearm

16

drawn after lieutenant Bologna ordered officers to transition to a Taser." (*Id.* at p. 20). Dr. Porcher offers no analysis on the timeframe between the order to transition to Taser and the officer firing his service weapon; he ignores the fact that a Taser was deployed without effect, and he fails to acknowledge that Plaintiff had a firearm trained on an officer. The amount of time that transpired between the order to transition to Taser and SGT Marcum discharging his weapon is critical to determining whether the officers had adequate time to appreciate the allegedly excess force and time to intervene. Dr. Porcher offers no comment on whether the officers had time to intervene, assuming they appreciated SGT Marcum's display of his weapon as unconstitutional excessive force. As such, Dr. Porcher's methodology is grossly wanting, rendering his opinion unhelpful and inadmissible.

### 5. *Unlawful Entry*

Lastly, Dr. Porcher opines the police lacked probable cause to enter the Plaintiff's residence because the officers did not independently verify Mr. Johnson's allegations concerning Ms. Sapp's mental health.[8] (*Id.* at p. 21). As the Court previously noted, the jury receives instruction on the law from the Court and not from an expert witness. Even if this was not the case, Dr. Porcher cites no authority in support of his opinion that the entry by police was unlawful. Once again, he simply asks the jury to trust him to be the final arbiter on this issue.

---

[8] The Third Amended Complaint does not contain a cause of action for illegal entry. (*See generally* Doc. 26).

The Defendants argue Mr. Johnson authorized the police to enter the residence, and Dr. Porcher admits Mr. Johnson informed the 911 operator that his keys were not working, suggestive of control over the premises. (*Id.* at pp. 6, 8). Even so, Dr. Porcher fails to address the precedent holding that the "Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant . . . ." *See Georgia v. Randolph*, 547 U.S. 103, 106 (2006). This exception applies even when the police hold an erroneous belief that the party providing consent possesses shared authority as an occupant. *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181–82 (1990)). Therefore, not only does Dr. Porcher fail to support his theory with analysis tied to the facts of the case, but he also ignores controlling precedent supported by facts provided in his report. For these reasons, Dr. Porcher's opinions regarding the lawfulness of the initial entry into the Plaintiff's residence are inadmissible.

**IV.   CONCLUSION**

The Defendants challenge the admissibility of Dr. Porcher's expert opinions on the basis that his methodology is unreliable and that his opinions are not helpful to the jury. (Doc. 52, pp. 10–11). The Defendants dissect each opinion and demonstrate where the opinions are contrary to established legal principles and, therefore, irrelevant. (*See generally id.*). The Plaintiff has the burden to show by a preponderance of the evidence that the expert's opinions are admissible. Rather

than meet that burden, the Plaintiff simply proffered that Dr. Porcher's methodology is sound. Bald assertions are not sufficient to carry the burden or persuasion. Regardless, the Court has examined Dr. Porcher's opinions, including his methodology—or the lack thereof, and concurs with the Defendants that Dr. Porcher's analysis, his methodology, and his ultimate opinions run afoul of *Daubert*.

For the reasons expressed herein, it is **ORDERED AND ADJUDGED** that the Motion to Exclude the Testimony and Opinions of Dr. Porcher filed by Defendants City of Winter Park, John Bologna, Jeffrey Marcum, Jessica Eller, and Daniel Pushor (Doc. 52) is **GRANTED**.

**DONE AND ORDERED** in Orlando, Florida on June 13, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

19